IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **DEBRA DEARING,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | Civil Action No. 3:11-CV-2523-P-BK |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>FINDINGS, CONCLUSIONS, AND RECOMMENDATION</u>

This case has been referred to the undersigned for Findings, Conclusions, and

Recommendation on Plaintiff's *Motion for Summary Judgment* (Doc. 21) and Defendant's

*Motion for Summary Judgment* (Doc. 23).  For the reasons set forth herein, it is recommended

that Plaintiff's *Motion for Summary Judgment* (Doc. 21) be **DENIED**, Defendant's *Motion for*

*Summary Judgment* (Doc. 23) be **GRANTED**, and the Commissioner's decision be

**AFFIRMED**.

## I.  BACKGROUND[1]

### A.     <u>Procedural History</u>

Debra Dearing seeks judicial review of a final decision by the Commissioner of Social

Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI") under

the Social Security Act.  Plaintiff filed her application for SSI in August 2008, due to

impairments that she claimed became disabling in February 2007.  (Tr. 179).  Plaintiff's

---

[1] The following background comes from the transcript of the administrative proceedings,
which is designated as "Tr."

applications were denied at all administrative levels, and she now seeks review in this Court. (Tr. 5, 28, 64-65, 93).

**B.**     **Factual History**

Plaintiff was 45 years old on the date of the administrative law judge's ("ALJ") decision. (Tr. 28, 179).  She has a high school education and past relevant work as an electronics assembler.  (Tr. 28, 179, 281).

As of March 2007, Plaintiff was taking medications for anxiety and mild asthma.  (Tr. 336-38, 341).  Plaintiff was diagnosed with major depressive disorder in May 2007 and reported attempting suicide in 2000.  (Tr. 430-31, 436).  Nevertheless, her thought processes were organized and relevant, she was cooperative, her affect was congruent, and her speech was clear. (Tr. 436).

In March 2008, Plaintiff saw Dr. M.A. Zeb for an examination at the behest of the Texas Rehabilitation Commission.  (Tr. 519).  Plaintiff told Dr. Zeb that she had injured her left arm in 1999, which caused pain and weakness in her left hand, and that she was told that she had developed reflux sympathetic dystrophy ("RSD").  (Tr. 519).  Plaintiff reported that she had chronic back pain, and Dr. Zeb concluded that she could sit for 20 minutes, stand for one hour, move for one hour, and lift/carry 20 pounds.  (Tr. 520).  Dr. Zeb stated that Plaintiff's left arm was 3+ in strength, while her right arm was 5+, and her sensation and strength in the left leg were diminished.  (Tr. 520-21).  He described Plaintiff's motor power as being only "slightly diminished" in the left arm and leg, and her reflexes were normal.  (Tr. 521).  Plaintiff's grip strength and ability to reach also were normal, although she could not finger or feel properly with her left hand.  (Tr. 520).  In August 2008, the range of motion in all of her extremities was

2

normal.  (Tr. 543).

In September 2008, Plaintiff was described as being dependent on amphetamines and diagnosed with obsessive-compulsive disorder and bulimia.  (Tr. 645).  She was treated for acute hepatitis C in November 2008.  (Tr. 602-03).  In December 2008, Plaintiff reported during a doctor's visit that her muscles and joints would "lock up" and she could not open or close her hands.  (Tr. 615).  Plaintiff reported that she had stayed in a psychiatric hospital in May 2010, and in July 2010, it was noted that she had bipolar disorder.  (Tr. 732, 775).

**C.    Administrative Hearing**

At Plaintiff's hearing, she testified that she had been diagnosed with complex pain syndrome in 1998, which decreased her ability to use her hands and caused her to lose control of them.  (Tr. 51-53).  For example, Plaintiff stated that she had difficulty holding a pen, fastening buttons, pulling coins out of a change purse, and holding a glass.  (Tr. 52-53).  A vocational expert ("VE") testified that Plaintiff's past relevant work as an electronics assembler was described under Dictionary of Occupational Titles ("DOT") code 729.687-101 and was light, unskilled work with a Specific Vocational Preparation ("SVP") of 2.[2]  (Tr. 60-61).  That job did not require any public contact or postural changes.  (Tr. 61).

**D.    ALJ's Findings**

The ALJ first determined that Plaintiff suffers from the severe impairments of hepatitis C, depressive disorder, anxiety disorder, and a history of substance abuse.  (Tr. 17).  The ALJ found that Plaintiff's RSD of the non-dominant left arm was not a severe impairment, noting that she

---

[2] SVP is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dictionary of Occupational Titles*, Appendix B-1.

did not complain about having difficulty using her left arm at her hearing, had never required

surgery for her RSD, was not receiving treatment for it, and had been able to help her daughter

clean houses to earn money and care for her grandson.  (Tr. 22).  The ALJ then found that none

of Plaintiff's impairments, either alone or in combination, met or equaled a Listing.  (Tr. 22).

The ALJ ruled that, despite her impairments, Plaintiff had the residual functional capacity

("RFC") to perform light work, including the ability to sit, stand and/or walk six hours out of an

eight-hour work day, but could not climb, balance, stoop, kneel, crouch or crawl on more than an

occasional basis.  (Tr. 24).  The ALJ also found that Plaintiff could not understand, remember or

carry out complex or detailed tasks, and she required work that involved no public contact.  (Tr.

24).  At the fourth step of the sequential evaluation analysis, the ALJ determined that Plaintiff

could not perform her past relevant work as she actually performed it but, relying on the VE's

testimony, the ALJ found that Plaintiff could work as an electronics assembler as that job is

customarily performed in the national economy.  (Tr. 27).

## II.  ANALYSIS

A.  __Legal Standards__

1.  __Standard of Review__

Judicial review of the Commissioner's denial of benefits is limited to whether the

Commissioner's position is supported by substantial evidence and whether the Commissioner

applied proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232,

236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3).  Substantial evidence is defined as more

than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a

reasonable mind might accept as adequate to support a conclusion.  *Leggett v. Chater*, 67 F.3d

558, 564 (5th Cir. 1995).  In applying the substantial evidence standard, the reviewing court does

not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes

the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.  A

finding of no substantial evidence is appropriate only if there is a conspicuous absence of

credible evidentiary choices or no contrary medical findings.  *Johnson v. Bowen*, 864 F.2d 340,

343-44 (5th Cir. 1988).

> **2.      Disability Determination**

The definition of disability under the Social Security Act is the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Pursuant to

20 C.F.R. § 404.1520(a)(4) and 20 C.F.R. § 416.920(a)(4), if a claimant has an impairment

which meets the duration requirement and is listed in Appendix 1 or is equal to a listed

impairment, Plaintiff is deemed disabled without consideration of age, education, and work

experience.

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant

is disabled:

1.      An individual who is working and engaging in substantial gainful activity
        will not be found disabled regardless of medical findings.

2.      An individual who does not have a "severe impairment" will not be found
        to be disabled.

3.      An individual who "meets or equals a listed impairment in Appendix 1" of
        the regulations will be considered disabled without consideration of
        vocational factors.

4.      If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5.      If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).  Under the first four steps of the analysis, the burden of proof lies with Plaintiff to prove disability.  *Leggett*, 67 F.3d at 564.  The analysis terminates if the Commissioner determines at any point during the first four steps that Plaintiff is disabled or is not disabled.  *Id.* Once Plaintiff satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that Plaintiff is capable of performing.  *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

**B.      Issues for Review**

**1.      Whether the ALJ Erred in Finding that Plaintiff's RSD Is Not a Severe Impairment**

Plaintiff first argues that the ALJ erroneously concluded that she had not complained at the administrative hearing that she had difficulty using her left arm, and the medical evidence supports her assertion as well.  (Doc. 21 at 5).  Plaintiff concludes that the ALJ thus erred in determining that her RSD is not severe and not including the resultant limitations in his RFC assessment.  *Id.* at 5-7.

The government responds that the medical evidence and Plaintiff's daily activities support the ALJ's finding that Plaintiff's RSD had no impact on her ability to work or her RFC. (Doc. 23 at 9-11).  Further, the government maintains, the ALJ considered all of Plaintiff's impairments, including those that he found non-severe, in formulating Plaintiff's RFC.  *Id.* at 11-12.

A claimant has the burden of proving his disability by establishing a physical or mental impairment lasting at least twelve months that prevents him from engaging in substantial gainful activity.  *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).  An impairment is only considered "not severe" if it is a slight abnormality that has such a minimal effect on the claimant that it would not be expected to interfere with his or her ability to work, irrespective of age, education or work experience.  *Stone v Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).  The mere mention of a condition in the medical records does not establish a disabling impairment or even a significant impact on that person's RFC.  *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (noting that the mere presence of an impairment is not disabling *per se* because the claimant also must show that he is so functionally impaired thereby that he is precluded from engaging in any substantial gainful activity).

In this case, there was some conflicting evidence in the record regarding the severity of Plaintiff's RSD.  Nevertheless, most of the evidence supporting Plaintiff's contention that the condition was severe were her own reports of the problems it caused, as opposed to any objective medical evidence.  (Tr. 51-53, 519, 520-21, 543, 615).  Moreover, the facts that Plaintiff did not actively seek medical treatment for her RSD and engaged in various physical activities further undermine her contention that the condition was severe.  (Tr. 20, 22, 233-236, 267-269) (noting

7

that Plaintiff was able to take care of her personal needs; prepare simple meals; perform

housework, such as cleaning, laundry, ironing, vacuuming, and dusting; go for walks; use public

transportation; shop for food and clothing; manage her finances as long as she was not feeling

anxious; visit with others; read; help take care of her grandson; and clean houses to earn extra

money); *Cf. Leggett*, 67 F.3d at 565 n.12 (noting claimant's ability to care for his three daughters,

perform household chores, cut the grass in small increments, and walk up to six blocks at a time).

Substantial evidence thus supports the ALJ's determination that Plaintiff's RSD was not a severe

impairment.  *Greenspan*, 38 F.3d at 236 (holding that it is not the reviewing court's place to

reweigh the evidence, retry the issues, or substitute its own judgment, but rather, to scrutinize the

record to determine whether substantial evidence is present).

**2.     Whether the ALJ's RFC Finding is Supported by Substantial Evidence**

Plaintiff next argues that the ALJ's RFC finding is contradicted by the findings of

examining consultative physician Dr. Zeb, who found that Plaintiff could not sit for more than 20

minutes at a time and stand or move for more than an hour at a time.  (Doc. 21 at 7-8).  Plaintiff

also contends that, upon remand, the Court should direct the ALJ to make a finding regarding her

ability to sustain employment in light of the severe fatigue her hepatitis C causes.  *Id.* at 8-9.

Defendant responds that the ALJ correctly relied on and discussed the medical evidence,

doctors' reports, and Plaintiff's testimony in determining her RFC and in concluding that her

subjective complaints were not entirely credible.  (Doc. 23 at 13).  Furthermore, Defendant urges,

the ALJ did not discredit Dr. Zeb's opinion on Plaintiff's sitting, standing, and walking abilities

and, even if he did, Dr. Zeb's findings in that regard were contradicted by his own examination

results and the objective medical evidence.  *Id.* at 13-14.  Finally, Defendant contends that the

ALJ need not make a specific finding about Plaintiff's ability to work over time because there is no evidence that her physical ailment waxes and wanes, resulting in periods of incapacity. *Id.* at 16-17.

The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite her impairments. 20 C.F.R. § 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether the claimant can work. 20 C.F.R. § 416.920(a)(4)(v). The ALJ makes the RFC determination by considering the claimant's ability to lift weight, sit, stand, push, pull, etc. 20 C.F.R. § 416.945(b).

In assessing RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. SSR 96-8p; 20 C.F.R. § 416.923. Unless he gives the treating physician's opinion controlling weight, the ALJ must explain the weight accorded to the opinions of a state agency examining physician. 20 C.F.R. § 416.927(e)(2)(ii). Nevertheless, the harmless error doctrine applies in Social Security disability cases, and procedural perfection is not required as long as the claimant's substantial rights have not been affected by an ALJ's error. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1998).

Plaintiff is correct that the ALJ did not explain the weight he gave to Dr. Zeb's examining physician opinion that Plaintiff was limited to sitting for 20 minutes and standing and moving for one hour. (Tr. 520). Nevertheless, such error was harmless because substantial evidence supports the ALJ's finding that Plaintiff can sit, stand, and walk for six hours in an eight-hour work day. *Morris*, 864 F.2d at 335. First, Plaintiff attested that she engages in many activities of daily living as noted above. (Tr. 20, 22, 233-236, 267-269). Second, Dr. Zeb's limitations conflict with his

9

own findings in that he noted that Plaintiff's motor power in her left leg was only slightly

diminished and her reflexes were normal.  (Tr. 521).  Further, subsequent to Dr. Zeb's

examination, it was noted that Plaintiff's range of motion in all of her extremities was normal.

(Tr. 543).  Substantial evidence thus supports the ALJ's determination of Plaintiff's RFC.

Finally, the Court agrees with Defendant that there was no need for a specific finding by

the ALJ about Plaintiff's ability to maintain work because there was no evidence in the record that

her physical ailments wax and wane over time, resulting in periods of incapacity.  *See Frank v.

Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003) (holding that, to support a finding of disability, a

claimant's intermittently recurring symptoms must be of sufficient frequency or severity to

prevent the claimant from holding a job for a significant period of time).

**3.     Whether the ALJ's Finding that Plaintiff Can Work as an Electronics Assembler is Supported by Substantial Evidence**

Plaintiff next argues that the ALJ found that Plaintiff could not understand, remember, or

carry out complex or detailed tasks, but an electronics assembler position involves a reasoning

level of 2, which requires the ability to apply commonsense understanding to carry out "detailed"

instructions.  (Doc. 21 at 10).  Defendant responds that this argument fails because (1) Plaintiff

waived it by failing to cross-examine the VE on whether there was a conflict between the

provisions of the DOT and his testimony; and (2) the ALJ properly relied on the VE's testimony

rather than the DOT's job description.  (Doc. 23 at 17-20).

The VE in this case testified that Plaintiff's past relevant work was light, unskilled work

with an SVP of 2 and that type of work did not require any public contact or postural changes.

(Tr. 60-62).  The only questions Plaintiff's attorney asked the VE on cross-examination were

whether that job involved production quotas and whether it would allow for unscheduled breaks. (Tr. 62). Because Plaintiff did not submit contrary proof or inquire of the VE whether there was any conflict between his finding that the electronics assembler position had a reasoning level of 2 and the ALJ's finding that Plaintiff could not carry out detailed tasks, Plaintiff has failed to meet her burden of proof. *See Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002) (holding that, where the claimant offered no contrary evidence and did not cross-examine or otherwise refute the VE's testimony, substantial evidence supported the ALJ's finding that the claimant could work); *see also Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000) (holding that an ALJ may rely on a VE's expert testimony where it conflicts with the DOT if the record reflects an adequate basis for doing so and noting that "claimants should not be permitted to scan the record for [such] conflicts, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing."). Accordingly, substantial evidence supports the ALJ's determination that Plaintiff could perform the job of electronics assembler as that job is generally performed in the national economy.

### III.  CONCLUSION

For the reasons set forth above, it is recommended that Plaintiff's *Motion for Summary Judgment* (Doc. 21) be **DENIED**, Defendant's *Motion for Summary Judgment* (Doc. 23) be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

**SO RECOMMENDED** on May 14, 2012.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

12